**WO**

SC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Steven Riess, | ) No. CV 09-1760-PHX-RCB (ECV) |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Robert Cordero, et al., | ) |
| Defendants. | ) |

Plaintiff Richard Steven Riess, who is confined in the Eloy Detention Center (EDC), a private prison facility of Corrections Corporation of America (CCA), in Eloy, Arizona, has filed a *pro se* civil rights Complaint pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and an Application to Proceed *In Forma Pauperis*.[1] The Court will order Defendants Behrens and Stansel to answer the Complaint and dismiss the remaining Defendants without prejudice.

**I.    Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1).

---

[1] Plaintiff was convicted by a jury of perjury and false claim of citizenship and was sentenced to 24 months imprisonment followed by three years on supervised release in United States v. Riess, CR 08-0723-PHX-SRB, doc.# 77, 78, 91. An appeal from the conviction is currently pending in the Ninth Circuit Court of Appeals, No. 09-10070.

The Court will not assess an initial partial filing fee. 28 U.S.C. § 1915(b)(1). The statutory fee will be collected monthly in payments of 20% of the previous month's income each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

## II.   Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.

1  Id. at 1951.

## III. Complaint

Plaintiff alleges eight counts for violation of his religious and equal protection rights. He sues U.S. Immigration and Customs Enforcement (ICE) Officers Robert Cordero and Keith Acosta. Plaintiff also sues former EDC Warden Bruno Stolc and his successor, James Schomig; EDC Assistant Warden Karl Stansel; and EDC Chaplain Niles Behrens. Plaintiff seeks injunctive and punitive relief.

Plaintiff alleges the following facts in his Complaint: Plaintiff is Jewish. Plaintiff first arrived at EDC on September 26, 2007. To participate in or attend religious services at EDC required the approval of Chaplain Behrens; Plaintiff requested approval to participate in weekly Jewish religious services. On October 2, 2007, Plaintiff asked an assistant of Behrens for a copy of the Torah and Siddur; EDC provided other religious texts, such as the Bible and the Koran to Christian and Muslim inmates. (Doc.# 1 at 5F.) Behrens' assistant allowed Plaintiff to check the storage room, where he found copies of the Siddur, but not the Torah. (Id.) The assistant said that she would ask Behrens if Plaintiff could receive a copy of the Siddur. (Id.)

On October 9, 2007, Plaintiff met with Behrens and Rabbi Hayman, a volunteer advisor at EDC. (Id. at 3.) Plaintiff asked Behrens to receive a kosher diet and requested a copy of the Siddur and the Torah. (Id. at 5B, 5F.) Behrens told Plaintiff he had to obtain the religious texts on his own. (Id. at 5F.) When Plaintiff told Behrens that EDC had copies of the Siddur in storage, Behrens responded that he would check and get back to Plaintiff. (Id.)

On October 11, 2007, Behrens denied Plaintiff's request to participate in Jewish religious services stating that Plaintiff was not Jewish. (Id. at 3.) Behrens also denied Plaintiff's request for a kosher diet. (Id. at 5B.) Plaintiff filed a grievance regarding both issues, which Behrens denied. (Id. at 3, 5B.) Plaintiff did not receive a response to his appeal. (Id.) On October 19 and 20, 2007, Plaintiff fasted for religious reasons and informed

staff of the reason for fasting. (<u>Id.</u> at 3A.) Plaintiff was then sent to segregation for "'medical observation'" and was apparently released from segregation after a few days. (<u>Id.</u>)

From November 2007 until June 6, 2008, Plaintiff submitted numerous requests to Behrens and Stansel to be permitted to attend and participate in Jewish religious services. His requests were denied or ignored. (<u>Id.</u> at 3A.) From October 2007 until June 6, 2008, Plaintiff submitted numerous requests to Behrens for a kosher diet, but Behrens ignored or denied each request. (<u>Id.</u> at 5B.) Plaintiff also filed grievances, which Behrens denied, and Stansel denied appeals from the denial of his grievances. (<u>Id.</u>) Over this same period, Plaintiff repeatedly attempted to obtain a copy of the Torah and Siddur. Although Behrens told Plaintiff that he had ordered a Torah, Plaintiff did not receive one from Behrens, although inmates of other faiths were provided copies of religious texts. (<u>Id.</u> at 5F-5G.) In February, 2008, in response to a grievance filed by Plaintiff, Behrens told Plaintiff that he was not Jewish. (<u>Id.</u> at 5G.) Nevertheless, Behrens also told Plaintiff that he had ordered a Torah and would provide it to Plaintiff when it arrived. (<u>Id.</u> at 5G.) Stansel denied Plaintiff's appeal from the denial of the grievance. In April 2008, a friend sent Plaintiff a Torah and Siddur as a gift. (<u>Id.</u>) Not until after Plaintiff received a copy of the Shortly thereafter, Behrens told Plaintiff that the Torah he ordered had finally arrived. (<u>Id.</u>)

On April 6, 2008, Plaintiff sent a written request to Behrens for permission to participate in Passover ceremonies and for approval to receive a kosher diet during the seven days of Passover. (<u>Id.</u> at 3A, 5B.) In the week prior to Passover, Plaintiff also sent a request to Stansel and Behrens to at least receive meal trays with no leavened items during Passover and told them that he could not accept any trays with such items. (<u>Id.</u> at 5B.) They denied his request. (<u>Id.</u>) Plaintiff contends that during the week of Passover, he "was forced to forego all meals for 4 days because the food service staff would not hand [him] a tray with

- 4 -

1  no bread unless [he] had written approval from Behrens."[2]  (Id.)

2  On April 16, 2008, Behrens denied Plaintiff's request for permission to participate in Passover ceremonies. (Id. at 3A.) Plaintiff's requests to Stansel were also denied. (Id.) Plaintiff informed his "Deportation Officers" Cordero and Acosta that he was being denied his rights to practice his religion and requested their assistance, but they either ignored his requests or told him that he had to take up the issue with CCA. (Id. at 3A, 5B.) On June 6, 2008, Plaintiff was transferred to another facility. (Id. at 3A.)

On April 21, 2009, Plaintiff was transferred back to EDC. (Id. at 4.) Plaintiff again filed a request to Behrens for permission to participate in Jewish religious services. (Id.) Plaintiff informed facility staff that he required a religious/kosher diet and that he would not eat non-kosher diet. (Id. at 5D.) Plaintiff sent a request to Behrens for a kosher diet, but he contends that Behrens ignored the request. (Id.) On April 24, 2009, and after, Plaintiff sent numerous requests to Cordero and Acosta about the denial of Jewish religious services and a kosher diet but they "refused" to take "any affirmative action." (Id. at 5D, 4.) On April 28, 2009, Plaintiff filed a grievance about being denied access to Jewish religious services and a kosher diet. (Id. at 4, 5D.) Behrens denied Plaintiff's request for religious services stating "'Elements of the Jewish faith will be provided to Jewish detainees.'" (Id. at 4.) Behrens denied the grievance for religious services and a kosher diet and Stansel denied the appeal. (Id. at 4, 5D.)

On May 1, 2009, Plaintiff was placed in isolation for medical observation after he refused to eat non-kosher meals for 10 days. (Id. at 5D.) Plaintiff was held in a suicide cell; the light in the cell did not work, there was no table or chair, he was denied access to the law library and legal supplies and anti-Semitic symbols were etched into the doorframe. (Id.) The next day, Plaintiff was informed by medical staff that to be returned to general

---

[2] Plaintiff does not state when Passover began in 2008. According to an on-line source, Passover began at sunset on April 19, 2008 and ended seven days later on April 26, 2008. See http://www.when-is.com/passover-2008.asp#.

population and regain access to legal materials, he had to start eating the non-kosher meals. (Id.) After two days in the isolation cell, Plaintiff began eating non-kosher meals in order to be released from isolation. (Id.) He was released from isolation on May 5. (Id.) Plaintiff continued to request a kosher diet from Behrens and Stansel, but they "ignored" his requests. (Id.) Plaintiff also continued to request the assistance of Cordero and Acosta, but they provided non-responsive answers and eventually stopped responding to Plaintiff.

On July 20, 2009, Plaintiff filed a motion for change of venue in the immigration court citing the alleged ongoing violations of his religious rights and it "became known" that Plaintiff was preparing to file a complaint regarding violation of his religious rights at EDC. (Id.) On July 26, 2009, Stansel stopped by Plaintiff's cell and told him that the new warden, Schomig, was working with Behrens and a Rabbi to see what could be done to provide Plaintiff a kosher diet. (Id.) On August 13, 2009, Plaintiff started receiving a kosher diet. (Id.)

## IV.  Failure to State a Claim

To state a claim under §1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

### A.  Cordero and Acosta

Plaintiff names ICE Officers Cordero and Acosta as Defendants. Plaintiff alleges the following: EDC is a "Contract Detention Facility (CDF) under contract" with ICE to house ICE detainees. (Doc.# 1 at 3A.) ICE has published National Detention Standards (NDS) with which every CDF must comply. (Id.) According to Plaintiff, "[w]hen a CDF fails to

comply with an NDS, or when violations of a detainee's rights occur ICE is required to investigate and authorized to enforce the CDF's compliance."[3] (Id.) Plaintiff contends that he regularly informed ICE Officers Cordero and Acosta that his religious rights were being violated but they failed to act or told Plaintiff that he had to take up the issue with CCA staff.

Plaintiff does not allege facts to support that either Cordero or Acosta had a duty or the authority to intercede in the resolution of the alleged denial of Plaintiff's religious rights by prison staff, even if the agency for which they work, i.e., ICE, monitors EDC as a CDF. Further, Plaintiff alleges that he was consistently informed that the prison Chaplain had "complete authority to grant or deny religious requests . . . ." Plaintiff therefore fails to state a claim against them and they will be dismissed.

### B. Former Warden Stolc and Warden Schomig

Plaintiff also sues former EDC Warden Stolc and his successor, Warden Schomig. Plaintiff generally alleges that they were aware of the alleged violation of his religious and equal protection rights but failed to act to stop the alleged violations. Plaintiff fails to set forth any facts to support these assertions. Rather, he appears to predicate liability solely on the status of these Defendants as wardens. There is no *respondeat superior* liability under Bivens, so a defendant's position as the supervisor of a someone who allegedly violated a plaintiff's constitutional rights does not make him liable. Iqbal, 129 S.Ct. at 1948 (2009). Defendants Stolc and Schomig will be dismissed.

. . .

## V. Claims for Which an Answer Will be Required

---

[3] As described in Orantes-Hernandez v. Gonzales, 504 F. Supp.2d 825, 861 (C.D. Cal. 2007), the NDS were developed in November 2000 by the former Immigration and Naturalization Service and contained 38 standards to govern the operation of detention facilities, compliance with which is monitored by ICE. The NDS was revised in late 2008. See http://www.ice.gov/doclib/PBNDS/religious_practices.pdf; http://www.ice.gov/doclib/PBNDS/pdf/detainee_handbook.pdf; http://www.ice.gov/doclib/PBNDS/pdf/grievance_system.pdf.

TERMPSREF

Plaintiff adequately states a claim for violation of his religious rights under the First Amendment, or the failure to intercede in alleged violations thereof, against Defendants Behrens and Stansel, as set forth in Counts I, II, V, VI. Plaintiff also adequately states a claim for violation of his equal protection rights, or the failure to intercede in the alleged violation thereof, against Behrens and Stansel as alleged in Counts III, IV, VII, VIII. Defendants Behrens and Stansel will be required to respond to these counts.

**V.     Warnings**

    **A.     Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

    **B.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

    **C.     Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

    **D.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet,

963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed *In Forma Pauperis* is **granted**. (Doc.# 3.)

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

(3) Defendants Cordero, Acosta, Stolc, and Schomig are **dismissed** without prejudice.

(4) Defendants Behrens and Stansel must answer Counts I-VIII.

(5) The Clerk of Court must send Plaintiff a service packet including the Complaint (doc.# 1), this Order, and summons forms for Defendants Behrens and Stansel.

(6) Plaintiff must complete and return the service packet to the Clerk of Court within 20 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(I).

(8) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. The Marshal must immediately file requests for waivers that were returned as undeliverable and waivers of service of the summons. If a waiver of service of summons is not returned by a

Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

    (a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10) **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11) Defendant must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13) This matter is referred to Magistrate Judge Edward C. Voss pursuant to

. . .

Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for further proceedings.

Dated this 21st day of October, 2009.

_____
Robert C. Broomfield
Senior United States District Judge