**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Steven Reiss, | No. CV 09-1760-PHX-RCB (ECV) |
| Plaintiff, | |
| vs. | **ORDER** |
| Karl Stansel, et al., | |
| Defendants. | |

Plaintiff Richard Steven Reiss, who is confined in the Maricopa County Jail, filed this *pro se* civil rights action pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), against employees of the Eloy Detention Center (EDC), a private prison facility of Corrections Corporation of America (CCA), and officers of the United States Immigration and Customs Enforcement (ICE). (Docs. 1, 8.) Defendants Deportation Officers (DOs) Robert Cordero and Keith Acosta, ICE employees, move to dismiss or for summary judgment. (Doc. 84.) The motion is ready for ruling. (Docs. 96, 100.)

The Court will grant the motion and dismiss the claims against Cordero and Acosta with prejudice.

**I.   Background**

Plaintiff's action arose out of the failure to provide him a kosher diet, access to Jewish religious services, access to congregate services in the facility chapel, and access to a Torah and Siddur (prayer book) while at EDC. Plaintiff filed a First Amended Complaint in which

he alleged that Cordero and Acosta had a duty to immediately report any allegations of misconduct to their supervisor or a higher-level ICE official. (Doc. 8 at 3-A.) He alleged that under the National Detention Standards maintained by ICE, a detainee may approach ICE directly with any allegations against the facility staff. Plaintiff asserted that Cordero and Acosta had a duty to report to higher-level ICE officials the failure of Stansel and Behrens, employees of CCA, to accommodate Plaintiff's religious beliefs. (Id.) The Court ordered Cordero to answer Counts I through VIII and Acosta to answer Counts I, II, and IV through VIII. (Doc. 25.) The Court also ordered Behrens to answer the allegations in Counts III, IV, VII and VII and Stansel to answer the allegations in Counts IV, VII and VII. (Id.)

Cordero and Acosta now move to dismiss or for summary judgment[1] on the grounds of qualified immunity because (1) they did not personally violate Plaintiff's constitutional rights and (2) a reasonable deportation officer under these circumstances could believe that determining whether and to what extent Plaintiff's requests could be accommodated were factual decisions to be made by the Chaplain, not them. (Doc. 84 at 2.)

## II. Motion for Summary Judgment

### A. Legal Standards

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in

---

[1] Defendants Stansel and Behrens separately move for summary judgment. (Doc. 93.) That motion is not yet ready for ruling and will be addressed in a separate order. Because the present order addresses only the motion by Cordero and Acosta, they will be referred to as Defendants.

- 2 -

contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(c) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." An issue of fact must be genuine. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits or declarations, if any. See Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 248-49.

**B.     Parties' Contentions**

**1.     Defendants**

In support of their motion, Defendants submit their Statement of Facts (Doc. 84, DSOF); the declaration of Robert Cordero (id., Ex. A, Cordero Decl.); the declaration of Keith Acosta (id., Ex. B, Acosta Decl.); and various other documents, including Detainee Request Forms from Plaintiff.

Defendants note that in his First Amended Complaint, Plaintiff alleged that on

October 9, 2007, he met with CCA Chaplain Behrens and Rabbi Hayman at the EDC and was denied religious accommodation on the grounds that he was not Jewish. (Id., DSOF ¶ 1; ref. Doc. 8 at 3.) Rabbi Hayman stated in a letter dated October 9, 2007, that based on his conversation with Plaintiff, Plaintiff "is not considered Jewish according to the Code of Jewish Law" and "is not required to practice any of Jewish laws or customs such as kosher dietary laws, shabbat and holidays etc." (Id.)

Defendants assert that DOs are assigned to monitor a detained immigration detainee's removal process. (Id. ¶ 2.) Cordero was assigned to Plaintiff from the time Plaintiff arrived at EDC in September 2007 to March 2008; Defendants assert that Cordero was involved with Plaintiff's allegations of United States citizenship, not his religious beliefs or the accommodation of those beliefs by CCA employees, and that Plaintiff sent Cordero two letters between September 2007 and March 2008 but that these letters did not mention religious accommodations. (Id.) Acosta became Plaintiff's DO in March 2008, and Plaintiff was transferred to another facility on June 6, 2008. (Id. ¶¶ 2, 4.) According to Defendants, during the time Plaintiff was detained at EDC he filed numerous grievances and detainee requests but only about 18 of them concerned religious accommodation issues. (Id. ¶ 3.)

Plaintiff was detained at EDC again from April 21, 2009, to January 22, 2010. (Id. ¶ 6.) On April 21, 2009, Plaintiff submitted a detainee request, addressed to "ICE OIC" (Officer In Charge), which is typically an Assistant Field Officer Director or designee. Plaintiff requested copies of ICE National Detention Standards concerning detainee discipline, religious services/rights and religious diets. (Id.) An unidentified ICE officer responded. (Id., Ex. D.)

On April 24, 2009, Plaintiff submitted another detainee request, addressed to ICE OIC. (Id. ¶ 7.) He stated:

> I arrived here on 4/21/09. I am Jewish and my religion requires me to eat a kosher diet. I have requested this of the Chaplain but have received no response. I have not eaten since arriving here and I will not eat a non-kosher diet. CCA EDC does provide a kosher diet. At the Florence SPC I was receiving a kosher diet. I request that you assist me in obtaining my religious diet, please.

Acosta responded to this request on April 24, 2009, stating "I will forward your request to

the Chaplin (sic). Please fill out the form correctly with your nationality and arrival date." (Id., Ex. E.)

During April or May, 2009, Cordero and Acosta together met with the Chaplain and discussed Plaintiff's requests for religious accommodations; Acosta also met with the Chaplain to discuss this without Cordero. (Id. ¶ 8.) The officers were advised that the Rabbi had determined that Plaintiff was not Jewish. (Id., Cordero Decl. ¶ 3, Acosta Decl. ¶ 2.) Acosta attests that on or before April 27, 2009, the Chaplain provided Acosta with a copy of the Rabbi's October 9, 2007, letter. (Id., Acosta Decl. ¶ 2.) The Chaplain advised Acosta that CCA had asked the Rabbi to visit EDC and re-evaluate Plaintiff but did not have a time-frame for when the Rabbi would return. (Id.)

On April 27, 2009, the Public Health Service at EDC Medical advised Acosta that Plaintiff's request for a kosher diet was not a medical issue. Acosta reported Plaintiff's religious accommodation issue to his supervisor and to the ICE Compliance Unit. (Id.)

On April 30, 2009, Plaintiff submitted another detainee request addressed to ICE OIC complaining that the Chaplain had not responded to requests for a kosher diet or Torah and that "[u]nder NDS requirements, the facility contract and CCA policy I have a right to a religious diet and the Chaplain is denying me that right, and so far the BICE has done nothing to protect that right at this facility." (DSOF ¶ 9.) Cordero responded to this request on May 1, 2009, by stating: "The chaplain has been made aware." (Id., Ex. F.)

On May 13, 2009, Plaintiff submitted a detainee request addressed to ICE OIC asking what actions ICE OIC had taken to protect Plaintiff's right to practice his religion. (Id. ¶ 10.) On May 15, 2009, Officer Acosta responded by stating: "This issue has been addressed." (Id., Ex. G.)

On May 18, 2009, Plaintiff submitted a detainee request addressed to Defendants stating that he was not asking for their assistance in protecting his constitutional rights but asking what specific actions they had taken to protect them and asserting that the matter had not been addressed. (Id. ¶ 11.) An unidentified officer responded on May 20, 2009, that the officer was unsure regarding the specific question. (Id., Ex. H.)

- 5 -

On May 21, 2009, Plaintiff submitted a detainee request addressed to Cordero, in which he stated that he is Jewish, that CCA is legally required to provide him with a kosher diet, and that ICE is the contract agency responsible for ensuring that CCA provides him that to which he is constitutionally entitled. (Id. ¶ 12.) In a response dated May 22, 2009, Acosta responded: "Please review your detainee handbook for the procedures to request a religious diet." (Id., Ex. I.)

On May 26, 2009, Plaintiff submitted a detainee request addressed to Defendants asserting that he had followed the documented procedures for 10 months but EDC had refused his religious rights; reasserting that ICE is the contracting agency and, therefore, ultimately responsible for ensuring his constitutional rights; and accusing Defendants of refusing to state what they had done. (Id. ¶ 13.) Acosta responded by informing Plaintiff in writing on May 27, 2009, "I will speak to you in person." (Id., Ex. J.)

On May 27, 2009, Plaintiff submitted a detainee request, addressed to Acosta stating that "[o]n 5-27-09 you stated that you would not assist me in obtaining my religious rights because the Chaplain and the Orthodox Rabbi state I am not Jewish. Please confirm whether this means you will take no further action in this matter." (Id. ¶14.) An unidentified officer responded on May 28, 2009, by stating: "You (sic) case was referred to the Rabbi and CCA. ICE cannot provide you with kosor (sic) meals unless the Rabbi or medical indicate that you can have them." (Id., Ex. K.)

Plaintiff filed grievances with CCA in June and August 2009, concerning his requests for religious accommodations, including an appeal to the Assistant Warden; Plaintiff was approved for a kosher diet on or about August 13, 2009. (Id. ¶ 15; ref. Doc. 8 ¶ 103.)

Defendants argue that the Ninth Circuit has held that requiring prisoners to submit the proper paperwork for obtaining religious accommodations is constitutional. (Doc. 84 at 9, citing Resnik v. Adams, 348 F.3d 763, 770 (9th Cir. 2003).) They assert that there is some indication that Plaintiff had not submitted complete and proper paperwork as of April 24, 2009, insofar as ICE understood the situation but that Plaintiff alleged on May 26, 2009, that he had done so. (Id. at 10.) They contend that either way, Plaintiff's correspondence with

- 6 -

them, although permissible, was not a ground on which these Defendants could approve Plaintiff's requests for religious accommodation. According to Defendants, the ICE/DRO[2] Detention Standard-Religious Practices provides that "[t]he facility chaplain, [ ] shall, in cooperation with the facility administrator and staff, plan, direct, and supervise all aspects of the religious program . . . ."[3] (Id.) Defendants assert that they properly brought the issue to the attention of the Chaplain and then to a supervisor and the Compliance Unit; they did not have the authority to impose upon CCA employees a decision to grant Plaintiff's requests. (Id., Cordero Decl. ¶ 2, Acosta Decl. ¶ 1.) According to Defendants, under the ICE/DRO Detention Standard, Grievance System, the Warden or designee at CCA could reverse the Chaplain's decisions or forward the grievance file to the ICE Field Office Director for that facility.[4] (Id. at 10.) Defendants also assert that inmates can complain directly to the Office of Inspector General. (Id., citing the ICE/DRO Detention Standard, Correspondence and Other Mail at 4-5.[5])

Defendants contend that although Plaintiff alleges that they should have reported CCA's "misconduct" as required by the Detention Standards, determining the sincerity and religious basis of Plaintiff's requests for religious accommodation and deciding the extent of that accommodation in accordance with ICE/DRO Detention Standards were factual determinations, not "misconduct" contemplated by the reporting requirements. (Id. at 11.) Defendants argue that they are not subject to liability for alleged constitutional violations by the Chaplain, Assistant Warden or other CCA employees. (Id., citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948-1949 (2009) (a plaintiff must show that each government-official

---

[2] Detention and Removal Operations.

[3] This document is not attached to Defendants' motion; it is, however, attached to Plaintiff's response. (Doc. 96, Ex. B.)

[4] Again, Defendants' fail to attach this document to their motion; however, it is attached to Plaintiff's response. (Doc. 96, Ex. C.)

[5] This document is also not attached to Defendants' motion but ICE/DRO Detention Standard, Grievance System so states. (Doc. 96, Ex. B. at 6-7.)

- 7 -

defendant, through the official's own individual actions, has violated the Constitution).)

Defendants conclude that they are therefore entitled to qualified immunity because they did not personally violate Plaintiff's constitutional rights and because a reasonable DO under these circumstances could believe that determining whether and to what extent Plaintiff's requests should be accommodated were factual decisions to be made by other persons, not them. (Id. at 11-12.)

### 2. Plaintiff

In opposition, Plaintiff submits his Statement of Facts Disputing DSOF (Doc. 96 at 3-10 (PDSOF)); his own Statement of Facts (id., PSOF at 10-13); and numerous exhibits, including his declaration (id., Ex. A, Pl. Decl.), ICE/DRO Detention Standard-Grievance System (id., Ex. B), and ICE/DRO Detention Standard-Religious Practices (id., Ex. C).

Plaintiff asserts that he was not denied religious accommodations on the ground that he is not Jewish; rather, no attempt was made by any employee, representative or agent of EDC to determine the sincerity of Plaintiff's religious beliefs. (Id. PDSOF ¶ 1.) DOs are required to respond to all allegations of staff misconduct by CCA employees and Black's Law Dictionary defines "misconduct" as a dereliction of duty; unlawful or improper behavior. (Id. ¶ 2.) Plaintiff submitted many Detainee Request Forms to Defendants regarding the denial of his religious rights and rarely received an answer.[6] (Id.) He asserts that ICE has a Compliance Unit whose duty it is to monitor and enforce the contracting detention facilities' compliance with ICE Detention Standards but that Defendants would often intercept his correspondence and provide their own answers. In July 2009 Plaintiff spoke to Officer Ramirez of the ICE Compliance Unit and she stated that she had no knowledge of ongoing denials of Plaintiff's constitutional rights. (Id.)

Plaintiff asserts that in September 2009, Behrens informed Plaintiff that he had not been contacted by anyone from ICE regarding Plaintiff's religious requests. (Id. ¶¶ 8, 9, 14.) No supervisors from ICE contacted Plaintiff regarding his religious requests, and Defendants never provided any indication that they had informed an ICE supervisor about the ongoing

---

[6]Plaintiff's paragraphs skip from #2 to #5. (Doc. 96 at 5-6.)

- 8 -

denial of Plaintiff's rights. Plaintiff spoke to Acosta's supervisor Mark Saccamano in August 2009, and he stated that he was not aware of the denial of Plaintiff's constitutional rights. (Id.)

Plaintiff asserts that although Acosta responded to Plaintiff's request by stating that his issue had been addressed, there is no evidence that any action was ever taken. (Id. ¶ 10.) In response to Plaintiff's request of May 27, 2009, Acosta went to Plaintiff's housing unit and advised him that Acosta "would not assist Plaintiff in protecting Plaintiff's constitutional rights." (Id. ¶ 13.) The grievances filed in June and August 2009 were denied and were not related to the later decision to provide Plaintiff a kosher diet. (Id.)

In response to Defendants' asserted grounds for qualified immunity, Plaintiff argues that he does not allege that Defendants had direct involvement in the ongoing denial of accommodation of his religious rights. (Id. at 1.) Instead, Plaintiff asserts that pursuant to ICE/DRO Detention Standard-Grievance System, with which ICE claims that all of its contract detention facilities must comply, Defendants had a duty to report the ongoing denial of Plaintiff's constitutional rights to a supervisor or higher-level ICE official, who in turn had a duty to report the violation to his supervisor or take some appropriate action. (Id.) Plaintiff concedes that "it is beyond the scope of Federal Defendants' duties as Deportation Officers (DOs) to directly provide for the religious requests of ICE detainees." (Id. at 2.) Plaintiff's asserts that his claims against these Defendants are that on being informed of the ongoing denial of Plaintiff rights, they had a duty to take a specific course of action but they consistently and deliberately refused to do so and that this resulted in the continued denial of Plaintiff's rights by Stansel and Behrens. (Id.)

### 3. Reply

In their reply, Defendants assert that Plaintiff's only theory of liability is that all ICE employees have a duty to report "misconduct." (Doc. 100 at 6.) They argue that if Plaintiff's theory was correct, all employees would have a duty to decide for themselves whether a detainee's religious requests were sincere and whether and how the requests should be accommodated; Defendants contend that such a theory was rejected in Resnik. 348 F.3d at

770.  Defendants contend that the chaplains make such decisions and that if detainees disagree with them, the detainees can appeal.  (Doc. 100 at 6.)  Defendants note that they were not part of that process.  They brought Plaintiff's religious requests to the attention of the Chaplain and were told that Plaintiff was not Jewish. They reported the issue to a supervisor and to the Compliance Unit.  (Id.)

Defendants also argue that there is no causal connection between Plaintiff's rights and any alleged duty to report misconduct to the Office of Inspector General.  Plaintiff himself reported it, and the Office of Inspector General declined to investigate; Defendants assert that this confirms that religious accommodations for individual detainees is a factual issue for facility staff to resolve.  (Id.)

Defendants reassert their entitlement to qualified immunity.  (Id. at 7.)

In support of the reply, Defendants submit supplemental declarations of Cordero and Acosta (id., Exs A and B, respectively) with attachments, including a redacted copy of the letter sent to Cordero that Plaintiff denies having sent and the e-mail string documenting that Acosta advised his supervisor regarding Plaintiff's request for a kosher diet and that the Chaplain had stated that the Rabbi had been asked to re-evaluate Plaintiff.

### C. Analysis

The Court will grant Defendants' motion and dismiss the claims against them with prejudice.  Not only does Plaintiff not establish a triable issue of fact, but, on the record before it, the Court now finds that Plaintiff fails to state a claim against these Defendants that is cognizable under Bivens.

"In the limited settings where Bivens [applies], the implied cause of action is the 'federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.'"  Iqbal, 129 S. Ct. at 1948 (quoting Hartman v. Moore, 547 U.S. 250, 254, n. 2 (2006)).  A complaint sufficiently sets forth the elements of a Bivens claim by alleging a violation of the plaintiff's federal constitutional rights by agents acting under the color of federal law.  Morgan v. United States, 323 F.3d 776, 780 (9th Cir. 2003).  Here, Plaintiff concedes that as to these Defendants, he is not asserting that they directly participated in the ongoing denial of his

right to the free exercise of his religion; rather, he is asserting that they failed in their duty to report the ongoing denial of such rights. But those allegations do not state a claim for denial of a constitutional right. The Ninth Circuit has held that an inmate has no independent constitutional right to a grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). Likewise, an inmate or a detainee has no independent constitutional right to a second or parallel complaint process; therefore, even if Defendants failed in their duty to report Plaintiff's complaints, Plaintiff has no constitutional right to enforce such a duty and, thus, no Bivens claim. Plaintiff's reliance on the language in the ICE/DRO Detention Standard-Grievance System does not create a *constitutional* claim.[7]

Moreover, because Plaintiff concedes that Defendants had no direct involvement in the denial of his right to free exercise of religion, Plaintiff cannot show that Defendants' conduct caused the harm alleged. To prevail on a claim under Bivens, a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976). Courts have held that where a defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); Halloum v. Ryan, 2011 WL 285857 (D. Ariz. Jan. 27, 2011). Similarly, where Defendants' only involvement was an alleged failure to "intervene" by reporting claimed violations, their conduct does not constitute unconstitutional behavior for purposes of Bivens. This is particularly true where

---

[7]The ICE/DRO Detention Standard-Grievance System provides:
All ICE employees are responsible for immediately reporting either orally or in writing any allegation of misconduct to their supervisor or a higher-level ICE official in their chain of command or directly to the ICE Office of Professional Responsibility or the DHS Inspector General. This reporting requirement applies without exception to all detainee allegations of officer misconduct, whether formally or informally submitted. (Doc. 96, Ex. B at 8.)

Plaintiff concedes that it is beyond the scope of these Defendants to directly provide for Plaintiff's religious requests. And in Resnik, the court rejected the argument that an inmate's letters to staff should be sufficient to establish a right to religious accommodations. Resnik, 348 F.3d at 770. Thus, Plaintiff cannot demonstrate a sufficient causal connection between Defendants' alleged conduct and the claimed constitutional harm—denial of free exercise of religion. Plaintiff's suggestion—that had Defendants made the reports that Plaintiff argues were required then an ICE official would have corrected the alleged constitutional violations—is simply too speculative to create a causal connection.

In addition, even if Plaintiff stated a claim, he has failed to demonstrate a triable issue of fact. As noted, Plaintiff concedes that his claim against Defendants is not their personal involvement in the denial of his right to free exercise of his religion and but, rather, their alleged failure to report an ongoing constitutional deprivation to appropriate ICE officials. He also concedes that Defendants did not have the authority to directly provide the religious accommodations that he requested.[8] Defendants attest that they responded to Plaintiff's requests regarding his claims of denial of religious rights by speaking to the Chaplain, which Plaintiff does not dispute, and that Acosta contacted his supervisor. Although Plaintiff disputes that he sent a particular letter to Cordero, Plaintiff provides no evidence of any specific requests to Cordero regarding the issue of Plaintiff's religious rights. Plaintiff's assertions that he complained many times are vague and conclusory. See Matsushita Elec.

---

[8]The Court will not consider the letter from the Rabbi, as no such letter was attached to Defendants' motion, or other allegations for which there is no support in the record. Defendants are cautioned that the Advisory Committee Notes to the 2010 Amendments to Federal Rule of Civil Procedure 56 state that "[t]he requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record." Fed. R. Civ. P. 56 advisory comm. nn; see also School Dist. No. 1J, Multnomah County, Ord. v. AcandS, Inc., 5 F.3d 1255, 1262 (9th Cir. 1993) ([i]f documentary evidence is cited as a source of a factual contention, Rule 56 requires attachment). Moreover, counsel's statements are not evidence. See Comer v. Schriro, 480 F. 3d 960, 988 (9th Cir. 2007).

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (the non-moving party must "set out specific facts showing a genuine issue for trial"); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment). As to Acosta, Plaintiff does not dispute Acosta's assertion that he contacted his supervisor; Plaintiff merely asserts there is no evidence. But Acosta offers his declaration, which is evidence, and in his reply, he submits a copy of an e-mail that was submitted to his supervisor.

In addition, Plaintiff's allegations that various officials advised him that they were unaware of Plaintiff's ongoing constitutional deprivations are insufficient to defeat summary judgment. As Defendants argue, not only are these allegations inadmissible hearsay, they are so vague and ambiguous as to be of no probative value. (Doc. 100 ¶¶ 2, 8, 9.)

Thus, the Court will grant Defendants' motion on the grounds that Plaintiff's allegations fail to state a claim cognizable under Bivens or, alternatively, that Defendants did not violate Plaintiff's constitutional rights.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion to Dismiss or for Summary Judgment (Doc. 84).

(2) Defendants' Motion to Dismiss of for Summary Judgment (Doc. 84) is **granted,** the claims against Cordero and Acosta are **dismissed with prejudice**, and Cordero and Acosta are **dismissed**.

(3) The remaining claims are against Defendants Stansel and Behrens.

DATED this 28th day of March, 2011.

_/s/ Robert C. Broomfield_
Robert C. Broomfield
Senior United States District Judge